FREDERICK M. HAWK AND OTHERS, Appellants, v. GEORGE
S. DAY AND OTHERS, Appellees.

**Judgments:** PRESUMPTION OF REGULARITY: WANT OF NOTICE: EVIDENCE.
1  A judgment entered without notice or consent of defendant is void and may be directly or collaterally attacked whenever any right based thereon is asserted; but when entered by a court of general jurisdiction a presumption exists in favor of notice or acquiescence therein which can not be overcome except by clear and satisfactory evidence, and mere failure of the record to show service of notice or return thereof, or appearance and consent to judgment will not overcome the presumption in favor of its regularity. This rule, however, does not obtain in cases dependent upon notice by publication or other form of constructive service, or in proceedings where the court exercises purely statutory powers.

**Partition:** TAXATION OF ATTORNEY'S FEES. Where the title to property
2  involved in a partition action is put in issue and each of the parties have employed counsel of their own choosing, attorney's

fees are not taxable as a part of the costs in favor of plaintiff's attorney.

**Same:** SUBSTITUTION OF ACTIONS. Where a pending suit in partition involves the entire subject matter and all persons entitled to a share in the property have been made parties, so that a decree entered therein will effectually settle and adjudicate the shares and interests of all concerned, it should not be displaced by a subsequent action brought to accomplish the same purpose.

**Appeal:** TAXATION OF COSTS. Where the record on appeal contains a large amount of printed matter which could have been materially condensed, the cost of printing will be taxed on the latter basis.

*Appeal from Keokuk District Court.*—HON. K. E. WILLCOCKSON, Judge.

THURSDAY, JUNE 16, 1910.

THE opinion states the case. Reversed.

*C. M. Brown* and *F. L. Goeldner,* for appellants.

*Talley & Hamilton, H. F. Wagner* and *H. F. Goeldner,* for appellees.

WEAVER, J.—Leah Hawk, Mary Ann Hawk, and Rebecca F. Hawk were sisters and owners in common of a tract of land in Keokuk County on which they lived in a common home. On December 7, 1898, Leah Hawk died testate. By the terms of her will she gave her one-third interest in the land, describing it, to her surviving sisters, also her personal property, "to hold and use during their natural lives and what remains at their death to go to Robert W. Hawk's children, each sharing equal." Robert W. Hawk was the son of the testatrix. The punctuation was such as to cast doubt upon its proper construction, and the surviving sisters, or at least one of them, raised the question whether the effect of the devise was not to give them a fee in the real

estate of which the testatrix died seised. After the will had been probated, Mary A. Hawk instituted a proceeding to construe this provision of the will. The petition was filed August 30, 1899. It named Mary Ann Hawk as plaintiff and Rebecca F. Hawk, Robert W. Hawk, and Frederick, Hugh, Lulu, and Edward Hawk, children of Robert W. Hawk, as defendants. This proceeding appears to have been pending in court from the date last mentioned until March 9, 1900, when a decree was entered of record finding and declaring that, "under the will of Leah Hawk, Mary Ann Hawk and Rebecca Hawk take a life estate only in the real estate in said will described, and that after their death the same goes to the children of Robert Hawk." Thereafter the said sisters Mary Ann and Rebecca continued to live upon the land enjoying its use, rents, and profits until March, 1904, when Rebecca died, leaving a will which has been duly probated, by the terms of which she specifically devised to George S. Day her "one-third interest and title" to the real estate, describing it. In March, 1908, Mary Ann Hawk died without will, leaving as her heir a daughter, Cyrilda Hawk. In November of the same year Frederick W. Hawk and other children of Robert began an action for the partition of the land, alleging that the title thereto was vested as follows: One-third thereof in the children of Robert under the will of Leah Hawk; one-third in George S. Day under the will of Rebecca; and the remaining one-third in Cyrilda as the heir of Mary Ann. To this proceeding the said George S. Day, Cyrilda Hawk, and a minor son of Robert were made defendants. The petition recited in substance the facts above stated, except that no reference was made to the proceedings to construe the will of Leah Hawk or to the decree rendered therein, a record which appears to have been lost sight of and the existence of which was unknown to plaintiffs' counsel, who had no connection with the case prior to the commencement of partition proceedings. To this petition a general demurrer was

filed, and the court announced its ruling sustaining the same, whereupon plaintiffs signified their election to stand upon their pleading without further amendment, and the court entered upon its desk calendar a memorandum for judgment against plaintiff for costs under date of December 23, 1908. Within a few days after this entry plaintiff's counsel discovered the record of the proceedings for the construction of the will, and on January 8, 1909, gave notice to the defendants of the filing of a petition to reopen the case. The petition was filed January 14, 1909, setting up the newly discovered record, excusing the failure to sooner present it, and asking that the case be reopened and plaintiffs allowed to amend their petition and plead the adjudication had in the proceedings to construe the will. This application, though strenuously resisted by the defendants, was sustained on February 20, 1909.

To explain the manner in which the position of the parties plaintiff and defendant appears to be reversed in the title to the cause as it comes up on appeal, it should here be stated that on December 31, 1908, after the ruling sustaining the demurrer to plaintiff's petition and dismissing their action had been announced, but before it had been entered of record and before the final adjournment of the term, Cyrilda Hawk and George S. Day instituted another action for the partition of the same property, naming Robert W. Hawk and a large number of other persons defendants. The children of said Robert were not made defendants therein, but came into the action by intervention and moved to dismiss the same, inasmuch as the subject-matter thereof was already before the court, and, in the event that such motion was denied, asked that such new action be consolidated with the first which had then been reopened and was awaiting trial. After considerable sparring, it was stipulated that said motions should be submitted to be decided in the final decree, and that the evidence on all the issues should be taken in a single hearing. Trial was then

had and decree entered to the effect that the decree in the proceeding for the construction of the will of Leah Hawk was an adjudication binding and concluding Mary Ann Hawk, who was the plaintiff therein, and upon all parties claiming through and under her, but that Rebecca F. Hawk was not thereby concluded, and as to her and those rightfully claiming through or under her the will of Leah should be held and construed as passing to them the fee to one-half of the said Leah's interest in the land; but it was further held that, Rebecca having failed to dispose of such interest by the terms of her will, it should be treated as intestate property and distributed to her heirs at law. It was ordered further that the motion of the original plaintiffs to dismiss the action last instituted for partition be overruled, that the demand for consolidation be denied, and that the maximum statutory attorney's fee be taxed in favor of plaintiffs in the action last begun. From this decree and the rulings above mentioned, the children of Robert Hawk, claiming title to all of that part of the land of which their grandmother, Leah, died seised, have appealed.

Notwithstanding the maze in which this controversy has become involved, rendering anything like a complete statement thereof very difficult, the essential propositions to be considered are quite simple. The ultimate question upon this appeal is the extent of the interest of the children of Robert Hawk in the land of which their grandmother, Leah Hawk, died seised. Her interest or share in the land was an undivided one-third, and, if the decree construing the will is to be held valid and conclusive as against all parties therein named, then their contention is right, and the entire fee of said share passed to the appellants subject only to the life estate of Mary A. Hawk and Rebecca F. Hawk, both of whom have since deceased. If, however, the decree did not conclude Rebecca F. Hawk, as was held by the trial court, then the right of appellants to more than was confirmed to them by the decree in this case depends on the

proper construction of the will as it may be determined by the court.

I. If the decree construing the will is to be held effective as to all parties therein named, discussion of most of the other matter treated in the argument of counsel will be rendered unnecessary, and we therefore give

**1. JUDGMENTS: presumption of regularity: want of notice: evidence.** it first consideration. While questioning the legal correctness of the construction put upon the will in said decree, counsel for appellee concede that, no appeal having been taken therefrom, it operates as an adjudication against Mary Ann Hawk and all persons claiming under or through her; but they deny such effect as to Rebecca F. Hawk and her heirs on the alleged ground that while she was named as a party to said proceeding, and her name is included in the decree, she was not in fact served with notice and did not appear therein nor consent to be bound thereby. In other words, it is claimed by the appellees that as to Rebecca F. Hawk the decree construing the will is void for want of jurisdiction of her person. In the nature of things, Rebecca being dead, no one is able to say, and no one testifies as a matter of knowledge, that notice was not served upon her, or that she did not in some manner appear in said proceedings or consent thereto. But it is shown that upon search of the files in the case no such notice or proof of service upon her is found therein. It is further shown that there is no entry or memorandum upon the appearance docket of any return of such service and no entry of any appearance in her behalf. On these facts alone it is contended by the appellees, and the trial court evidently so held, that the presumption in favor of the decree is overcome, and that as to Rebecca F. Hawk and her heirs it is void.

Under the rule obtaining in this state, there can be no serious question but that a judgment or decree obtained wholly without notice or consent of any kind is void, and its validity may be attacked directly or collaterally wherever

any right based thereon is asserted. But it is no less firmly established that the judgment of a court of general jurisdiction is supported by a strong presumption of the existence of every essential jurisdictional fact, and that such presumption must prevail until overcome by clear and satisfactory evidence. It is not enough for that purpose to simply raise a doubt and show the possibility that no notice was ever given. This is particularly true where the attack upon the judgment is of a collateral character. The rule is stated in 23 Cyc. 1078 as follows: "In the case of a judgment rendered by a domestic court of general jurisdiction which is attacked in a collateral proceeding, there is a presumption, which can only be overcome by positive proof, that it had jurisdiction both of the person and of the subject-matter and proceeded in the due exercise of that jurisdiction. . . . It will be presumed, unless expressly contrary to what is shown by the record, that legal and proper process was issued in the action, and that it was duly and regularly served upon the defendants." The accepted rule appears to be that it is not enough to show that a present search of the record discloses no affirmative statement or showing of the service of summons or notice. In other words, in an attack upon the validity of a judgment, absence of a record of a jurisdictional fact is not of itself sufficient to overcome the presumption of the existence of such fact. If the party affected by the judgment be living and testifies clearly in denial of such service, and he is a creditable witness, absence of any record thereof is a very important and ordinarily a decisive circumstance.

But where, as in the case at bar, the only basis of attack is the failure of the record to affirmatively show service or appearance, no authority or precedent called to our attention goes to the length of holding such showing sufficient to neutralize the presumption of regularity which attaches to the judgment. The only apparent exception to this general rule is in cases dependent upon notice by publication or

other form of constructive service, and in proceedings in which the court is called upon to exercise powers which are purely statutory. In such cases it has been held that to sustain a judgment the record must itself disclose facts affirmatively indicating the several steps by which jurisdiction has been acquired. That the general rule is otherwise has been too often recognized to permit anything like an exhaustive reference to the authorities; but the following fairly represent the views of all the courts. In *Wright v. Marsh,* 2 G. Greene, 94, it is said that collateral objection to a judgment "can never prove availing especially when applied to a record from a court of general jurisdiction in which power and jurisdiction will be presumed until the contrary clearly appears. . . . We regard it as well settled that want of jurisdiction will not be presumed in a court of general authority, and, where the record from such a court is silent or does not aver all the facts necessary to show that jurisdiction was properly exercised, it will still be presumed that the court legally acquired power over the subject-matter and over the parties." That rule is reaffirmed in even stronger terms in *Boker v. Chapline,* 12 Iowa, 206. See, also, *Hunger v. Barlow,* 39 Iowa, 541. To the same effect, see Brown on Jurisdiction, section 20a. In a note to the foregoing it is said: "Hence though the existence of any jurisdictional fact may not be affirmed upon the record, it will be presumed on collateral attack that the court, if of general jurisdiction, has acted correctly and with due authority, and its judgment will be as valid as though every fact necessary to jurisdiction affirmatively appeared." See, also, *Gas Co. v. Wheelock,* 80 N. Y. 278; *Benefield v. Albert,* 132 Ill. 665 (24 N. E. 634); *Swearengen v. Gulick,* 67 Ill. 208; *Nickrans v. Wilk,* 161 Ill. 76 (43 N. E. 741); *Merz v. Mehner* (Wash.) 106 Pac. 1118; 17 Am. & Eng. Ency. Law (2d Ed.) 1073-1075; 23 Cyc. 1079.

As we have already indicated, it was open to appellees

to plead and prove want of jurisdiction in the court to render the decree construing the will by an affirmative showing that no notice of the proceeding was served upon Rebecca F. Hawk, and that she was not in any other manner brought within the jurisdiction of the court in that proceeding. They have entered such plea, but the evidence offered is not that no service or notice was ever made, but that the record does not affirmatively show proof of service, which is a very different matter. The absence of record of service or other fact bringing the party within jurisdiction of the court entering judgment against him is the very thing which arouses the presumption of which we have spoken. If the fact or method or manner of service or appearance were found in the record, there would be no room for presumption, and it would be an absurdity to hold that the presumption may be overcome by pointing to the very omission which calls it into play. Service of process or notice upon an adverse party or an appearance by him is the primary inquiry, the very first thing a court is called upon to consider before entering judgment or decree affecting the rights of such party, and it will be presumed that, before attempting to pass judgment thereon, the court satisfied itself that by service, appearance, or otherwise jurisdiction to render it had been obtained. As the appellees have produced no evidence to rebut the presumption which the law supplies in support of the decree construing the will, we need not enter upon the further inquiry whether the relations of Rebecca to the case and the circumstances surrounding it were not sufficient to uphold a finding that she knew of the proceedings and consented thereto in a manner to make the decree *res adjudicata* as to her even in the absence of service of original notice.

Holding then, as we do, that the presumption in favor of the decree must prevail, it is unnecessary for us to consider or pass upon the construction of the will as an original proposition. It has been judicially construed, the presumed

regularity of the proceeding has not been overcome, and the decree as so entered must be observed and effectuated in a partition of the land.

II. Counsel have devoted considerable attention to the ruling of the trial court refusing to consolidate the two actions brought to partition the land and dismissing the one brought by the appellants. The facts seem to be that when the court sustained the demurrer to the petition in the action brought by appellants, and they elected to stand on their pleading, the court made the usual memorandum for a judgment upon its desk calendar, and before it had been entered or written up by the clerk, and before the adjournment of the term, the appellees, or some of them, began another action of the same nature and had served notice upon some of the parties named as defendants before appellants discovered the existence of the decree construing the will, and secured the setting aside of the ruling upon the demurrer. Appellees then resisted a consolidation of the two proceedings and proceeded to complete the service of original notice in their own action. The trial court seems to have held with the appellees that the action last instituted should be accorded the right of way, and the final decree was entered therein. It is somewhat difficult to suggest any good reason for the strife over the precedence between the two proceedings. Some things said in argument give color to the thought that the real apple of discord upon this feature of the case is the attorney's fee which is provided for in Code, section 4261. If so, counsel seem to have overlooked the fact that, where the title of property involved in partition proceedings is put in issue, and all parties are represented by counsel, neither may have attorney's fees taxed at the expense of the common property. *McClain v. McClain,* 52 Iowa, 272; *Duncan v. Duncan,* 63 Iowa, 150; *Everett v. Croskrey,* 101 Iowa, 17; *Finch v. Garrett,* 102 Iowa, 388; *Beeman v. Kitzman,* 124 Iowa, 86.

2. PARTITION: taxation of attorney's fees.

Prior to the enactment of this statute the courts of this state had quite generally adopted the practice of allowing attorney fees in partition cases where no contest was made, and chapter 184 of the Acts of the Twentieth General Assembly recognized and regulated such practice by fixing a maximum scale of charges. In carrying this provision into the Code (section 4261), attorney's fees for the plaintiff are provided to be taxed as costs; but the words "where no defense is made" were omitted from the sections, and, if we were to look to this provision alone, there would be colorable support for the claim that such fees should be allowed in any event. But in this same connection we find that by section 4260 "costs created by contest" of such proceedings are not taxable against the common fund. Attorney's fees, when taxable at all, are part of the costs and come within the limitation thus fixed. We regard it clear that, where the title to the property is put in issue, the Legislature did not intend to impose the burden of paying any part of plaintiff's attorney's fees upon the opposing parties who are represented by counsel of their own choosing. The only justification for the practice of assessing such fees is in the fact that in a very large proportion of partition cases there is no contest over proportionate shares, and the proceedings are amicable in character because they afford in many instances the easiest and most expeditious method of segregating the interests of tenants in common, and the attorney who institutes the action is serving the defendants as well as the plaintiffs. Under such conditions it is entirely equitable to provide that the shares of all parties be made to contribute proportionately to the expense thus incurred for the common benefit. But where the title or right of a party to share in the property is wholly denied, or his share, if any, is made a matter of dispute, and each employs the service of counsel, it would be signally unjust to require such contribution. In the case at bar, for instance, the plaintiffs in the proceedings last

begun denied the appellants' right to any part or share in the land, and compelled them to employ counsel in their own behalf to defend their rights in the courts to a successful conclusion, establishing and confirming the shares as claimed by them, and it hardly needs saying that, in the absence of a statute clearly requiring it, equity will not impose upon them the burden of paying counsel for services rendered to the opposing party in an unsuccessful attempt to defeat their title. The result of this decision is to give to the appellants the very share and interest which they claimed in the property at the outset of this litigation, and no part of the taxable costs since accruing by reason of the contest so made should be taxed to them or charged upon their shares in the land.

We are of the opinion that, the ruling upon the demurrer to the original petition having been set aside and the case reopened for trial, the court should not have displaced it in favor of the later action. It is

3. SAME: substitution of actions.

sought to justify this ruling under the precedent afforded by *Guinn v. Elliott*, 123 Iowa, 179, and because it is said that plaintiffs in the original case had not made defendants of all parties entitled to share in the land, and that such omission was corrected in the action begun by appellees. If the reason stated be sound, it demonstrates the error of the ruling. All parties whom we find entitled to share in the partition were in fact made parties to the action as originally brought, while of the numerous additional parties brought into the second proceeding none is found having any interest in the subject-matter. Moreover, in that action appellees failed to make parties of these appellants whom we find entitled to one-third of the land. The subject-matter of the action was before the court, and all persons entitled to share in the property had been made parties to the proceeding, and a decree entered therein could have been made effective to settle and adjudicate the shares and interests of all con-

cerned. The bringing of a second action and its displacement of the one already pending served to confuse the record, prolong the litigation, and increase the costs without any corresponding advantage to any one. We are therefore of the opinion that so much of the costs as have been made by reason of the second action should be taxed against the plaintiffs therein, and that appellant's one-third share in the land be charged with no share of the costs of the litigation, except such as would have been necessary and proper had no contest been made. No attorney's fees can be taxed in favor of either party.

III. We cannot pass unnoticed the manner in which this appeal has been presented. The abstracts are striking examples of burdensome fullness and unnecessary repetition. They contain all the pleadings in

4. APPEAL:
   taxation of
   costs.

both cases, together with motions, demurrer, affidavits, exhibits, and documents copied *in extenso,* including captions, signatures of counsel, and verifications; the records in the action for the construction of the will, including petition, answers, affidavits, and decree, set out with the same painful literalness no less than four several times, the will of Leah Hawk is seven times repeated, and the decree constructing the will seven times. In other respects the showing is unduly voluminous to an almost equal degree. We are not disposed to tax such clearly unnecessary costs in favor of parties making them. The material matters contained in the appellant's abstracts aggregating 141 printed pages could well have been condensed into a clear and comprehensive statement of 50 pages or less, and the costs of printing such abstracts will therefore be taxed on the basis of the latter figure.

For reasons hereinbefore stated, the decree of the district court is reversed, and cause remanded for further proceedings in harmony with this opinion. *Reversed.*